**LOCAL NO. 644, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, Plaintiff,**

v.

**WALSH CONSTRUCTION COMPANY, Inc., DIVISION OF GUY F. ATKINSON COMPANY, Defendant.**

**Civ. A. No. P-3298.**

United States District Court,
S. D. Illinois, N. D.

Jan. 3, 1972.

Western District of Missouri, a leader in the field of treatment for the incompetent accused.

**712**

Bernard M. Mamet, Chicago, Ill., Dale E. Sutton, Pekin, Ill., for plaintiff.

Gary S. Clem, Peoria, Ill., for defendant.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, District Judge.

Plaintiff has brought this suit pursuant to 9 U.S.C. § 4 and 29 U.S.C. § 185, for an order compelling defendant to submit to an arbitrator a dispute arising under a collective bargaining agreement which binds both parties, a copy of which is attached to the complaint. The union alleges that the company has violated the agreement by subcontracting "bargaining unit work."

The complaint also seeks an order directing the company to cease such subcontracting pending a decision of the arbitrator. The company, on the other hand, contends that the only existing dispute involves disputed "jurisdiction" over certain work between two craft unions—plaintiff Carpenters and the Ironworkers; and that such "jurisdictional disputes" are excluded from the general arbitration provision, being covered by a separate settlement provision in the agreement. Presently before the court is the company's motion for summary judgment under Rule 56(b), F.R.Civ.P. The parties have submitted affidavits and written briefs, respectively, in support of and in opposition to the motion.

The bargaining agreement states that "Any and all disputes, stoppages, suspension of work, and any and all claims, demands or actions resulting therefrom or involved therein" shall be settled by arbitration;[1] but the same section entitled "Arbitration," goes on to say, "It is hereby agreed by all parties to this contract that any and all jurisdictional disputes shall be processed under the 'Procedural Rules and Regulations of the National Joint Board for the Settlement of Jurisdictional Disputes.'" Such rules and regulations are not before the court, but are apparently available to the parties to this suit. Given this language, and another contract provision limiting subcontracting, it is clear to the court that the parties intended to require general arbitration for determination of disputes over subcontracting generally, but to settle disputes over union jurisdiction through the "Joint Board," thus providing non-disruptive and mutually exclusive arbitration-type procedures for both types of disputes. The basic question to be determined here, therefore, is in which category does the dispute here fall.

---

1. The applicable arbitration provision in the agreement is actually unintelligible: "Any and all disputes, stoppages, suspension of work, and any and all claims, demands or actions resulting therefrom or involved therein, *shall be settled and in-* *cluding final arbitration."* Both parties appear to accept the meaning here adopted, and it seems the only meaning of this provision reasonably consistent with a mutual intent to provide for arbitration of any dispute.

On a motion for summary judgment it is clear that the movant can prevail only by showing that "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Rule 56(c), F.R.Civ.P. It appears clear to the court, on careful analysis in the light of established federal labor law, that there are no material issues of fact for decision here, that the only thing for an arbitrator to decide if the matter were submitted to him would be a "jurisdictional dispute," and, hence, that it should go to the "Joint Board" and that defendant is entitled to a judgment of dismissal here as a matter of law.

The task of the court in a suit to compel arbitration was extensively treated in the Steelworkers Trilogy (United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). As stated by the Supreme Court in *Warrior,* "[T]he judicial inquiry under [29 U.S.C. § 185] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance . . .." 363 U.S. at 582, 80 S.Ct. at 1353. This protects a party from an order to arbitrate something he has not agreed to arbitrate; but, if the parties did so agree, then the merits of the dispute are reserved for the arbitrator rather than the court.

The easiest case is the one in which the parties have specified what, for lack of a better term, we will call "general" arbitration as the means for settling all disputes arising under the agreement. In such a case the *American* decision held that the trial court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." 363 U.S. at 568, 80 S.Ct. at 1346.

On the other hand, when the arbitration clause contains express exclusions, as in *Warrior* and the instant case, the court's inquiry must necessarily be somewhat broader; and the court must explore whether the dispute in question falls within the exclusion. In the circumstance of a vague exclusion, the *Warrior* Court said:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." 363 U.S. at 582–583, 80 S.Ct. at 1353 (footnote omitted).

Two points are made very clear by the *Steelworkers Trilogy.* First, it is clear that the court must decide the question of arbitrability. 363 U.S. at 583 n. 7, 80 S.Ct. 1347. Second, it is clear that the court should not delve into the merits of the dispute. 363 U.S. at 568, 569, 585, 598–599, 80 S.Ct. 1343. Indeed, in *Warrior,* speaking of an attempt to show that the parties' purpose had been to exclude certain grievances from arbitration, the Court said:

"Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." 363 U.S. at 585, 80 S.Ct. at 1354.

It has also been said that the court need only look at the face of the claim in deciding the issue of arbitrability. *See* 363 U.S. at 585, 80 S.Ct. 1347. *See also* Local Union No. 483, Int'l. Bro. of Boilermakers Iron Ship Builders, Blacksmiths, Forgers and Helpers, A.F.L.–C.I.O v. Shell Oil Co., 369 F.2d 526 (7th Cir. 1966). Here the asserted claim re-

lates to the subcontracting clause of the collective bargaining agreement, and the union argues, not without logic in view of some judicial dicta, that a dispute over such a claim is clearly for the arbitrator.

However, the instant case differs from *Warrior* and other previous cases because the jurisdictional dispute exception from general arbitration here is in no sense vague; it clearly and specifically excludes jurisdictional disputes from the general arbitration plan. Moreover, the Joint Board procedure established here is itself simply a different and specialized arbitration forum for particular disputes. The problem facing the court here is not really to decide arbitrability, but rather to decide which of two arbitration tribunals the parties here have agreed upon to decide the merits of the present dispute. The only problem causing stalemate between the parties to this suit is whether the dispute can conceivably be considered to be one involving only clearly prohibited subcontracting, which would go to a general arbitrator for decision on the merits, or whether it is purely a jurisdictional dispute, which goes to the Joint Board instead. It should go to one or the other for prompt resolution.

The record before the court—all the affidavits, allegations, and contentions on file—makes crystal clear that the only circumstance which raises the problem is that plaintiff union claims for its members employed by defendant certain construction work on the job in question, which is also claimed by Ironworkers employed by a subcontractor, i. e., scaffold building and installation of operating mechanism in the overall installation of steel overhead doors. It is equally clear that while neither employer is adamant on the point, both unions are.

If the dispute were to be submitted by plaintiff and defendant to a general arbitrator, the only question for him to decide would be whether this work claimed by the Carpenters is within their trade jurisdiction, because that is what determines whether or not such work can be properly subcontracted by the company under the terms of the collective bargaining agreement. If the subcontracting provision of that agreement could be interpreted by an arbitrator to give work to Carpenters, when Ironworkers also claim the same work, the equally important agreement between the parties here for Joint Board determination of jurisdictional disputes would have no meaning in this contract because that Board would be displaced by the arbitrator, whatever the arbitrator's decision might be in a given case. Confusion, rather than resolution by bargained procedures, might easily be the result. Resolution of disputes by bargained and agreed procedures is at the heart of federal collective bargaining law. *See* Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Plaintiff here should use, rather than seek to avoid, the Joint Board to establish its jurisdiction.

If by making a jurisdictional claim, without or even in direct conflict with a Joint Board determination, the union could force submission of the trade jurisdiction question to a general arbitrator, in a proceeding between it and a single employer to which the other union was not a party, the final and presumably consistent determinations of jurisdictional disputes by the Joint Board, after consideration of both sides of the dispute, would be completely circumvented. This court cannot escape the conclusions that, by providing clearly for Joint Board determination of jurisdictional disputes, the arbitration provision of the subject agreement clearly does not provide for general arbitration of this dispute as sought by plaintiff, but that it does provide for submission thereof to the Joint Board.

Plaintiff argues that it has asserted only the claim of contract violation by the defendant in subcontracting, and it

disavows any jurisdictional dispute with the Ironworkers. Such position is simply at variance with the facts of the pending difficulty as shown by affidavits filed on plaintiff's behalf. If there is any "game of semantics" in this regard, it is plaintiff who is indulging in it. Plaintiff also argues that the dispute here cannot be a jurisdictional one because employees of different employers are involved. The court knows of no requirement in the generally well understood concept of jurisdictional dispute between unions that only one employer may be involved. Such a rule would be ridiculous on any modern, large construction project, most of which involve many crafts and many employers, many of which employ only one craft. As shown by the affidavits here, jurisdictional disputes do occur in such circumstances.

Neither party here argues strenuously that a pending proceeding before the National Labor Relations Board, which involves the same dispute, deprives this court of jurisdiction, and this court concludes that it has jurisdiction of the parties here and the subject matter of this case, limited only as stated above by established law in labor relations matters. Presumably, the National Labor Relations Board will proceed in accordance with its jurisdiction. This court does not even undertake to decide or suggest what the next step by any party should be to get the merits of this dispute before the proper forum, but it is clear that the pending motion should be allowed so that neither this case nor a general arbitration proceeding will stand in the way of a sound resolution at the earliest possible time for the benefit of all concerned.

It is ordered, accordingly, that defendant's motion for summary judgment is allowed and that the case is hereby dismissed, with prejudice, at plaintiff's cost.